UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RICHARD EATMAN,**

    **Plaintiff,**

v.                                                                            Case No.: 8:10-CV-1370-T-33EAJ

**FEDERAL DEPOSIT INSURANCE
CORPORATION,** *in its capacity as
Receiver for Colonial Bank*,

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant's **Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction** (Dkt. 10), Plaintiff's **Response** (Dkt. 16), and Defendant's **Reply** (Dkt. 21).[1]  For the reasons stated below, the undersigned recommends that the motion be granted.

## Background

Plaintiff filed a claim with Defendant, the receiver for an insolvent bank, to recover vested deferred compensation benefits owed by the bank.  Defendant satisfied that claim with receiver's certificates entitling Plaintiff, like any unsecured general creditor, to a pro rata share of the bank's liquidated assets.  Maintaining that his claim was improperly subordinated, Plaintiff seeks relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and state law.  Defendant challenges Plaintiff's Article III standing and, pursuant to Fed. R. Civ. P. 12(b)(1), this court's subject matter jurisdiction, contending the relief sought is barred by § 1821(j) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C.

---

[1] The District Judge has referred the motion to the undersigned for a report and recommendation (Dkt. 26).

§ 1811 et seq.[2]

## Plaintiff's Allegations

Plaintiff was the President and CEO of Ft. Brooke Bank ("Ft. Brooke") (Dkt. 1 ¶ 6).  In November 1992, Ft. Brooke purchased a $500,000 life insurance policy ("the Policy") naming Plaintiff as the insured and Ft. Brooke as the owner/beneficiary (Dkt. 1 Ex. 3).  Ft. Brooke paid the single, one-time premium of $146,527.00 (Dkt. 1 ¶ 9).

On December 8, 1992, Plaintiff and Ft. Brooke entered a Non-Qualified Deferred Compensation Agreement ("the Plan") (Dkt. 1 ¶ 8; Dkt. 1 Ex. 2).  Section 2.1 of the Plan provided that, in the event Plaintiff continued his employment through his Plan-defined retirement date or incurred a Plan-defined disability, his employment would terminate and he would receive $500,000, payable in 120 monthly installments of $4,166.67 (Dkt. 1 Ex. 2 § 2.1).  That same day, Plaintiff and Ft. Brooke entered a separate Vesting Schedule providing that Plaintiff would become 10% vested in the Plan when he turned fifty years old, and would be vested an additional 10% on each subsequent birth date until he turned fifty-nine years old, when he would become 100% vested (Dkt. 1 Ex. 2 at 10).  Upon his termination, Plaintiff would be entitled to the amount vested plus interest (Id.).

The Plan also authorized Ft. Brooke to purchase life insurance for Plaintiff (Id. § 1.4). Section 7.4 provided that if the Plan was terminated for any reason other than Plaintiff's death or disability, he could purchase any policies on his life owned by the Bank (Id. § 7.4).

---

[2] As Defendant brings a "facial attack" to this court's subject matter jurisdiction (Dkt. 10 at 9), the well-pleaded facts in the complaint are accepted as true and any exhibits attached to the complaint may be considered.  See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007).

On or about November 1996, Colonial Bank ("Colonial") acquired Ft. Brooke, including its rights and obligations under the Plan (Dkt. 1 ¶ 14). Plaintiff and Colonial entered into a severance agreement effective February 1, 1999 (Dkt. 1 ¶ 16). Plaintiff received twenty-one payments under the Plan from December 2007 to August 2009, when Defendant assumed control of Colonial as receiver and discontinued the payments (Id. ¶¶ 19-21).

In November 2009, Plaintiff filed two proofs of claims with Defendant (Id. ¶ 27). The first sought $412,500, the remaining retirement benefit due under Section 2.1 ("the Benefits Claim") (Dkt. 1 Ex. 5). Alternatively, if the Plan was terminated, Plaintiff sought to purchase the Policy pursuant to Section 7.4 ("the Policy Claim") (Dkt. 1 Ex. 6). On or around April 2010, Defendant notified Plaintiff that the Benefits Claim would be satisfied by receiver's certificates and denied the Policy claim (Dkt. 1 ¶ 30).[3]

## Issues Presented

### I. Standing

"The requirement that a plaintiff must have standing to invoke the jurisdiction of the federal courts stems from the 'case or controversy' requirement of Article III of the United States Constitution." Baloco v. Drummond Co., 631 F.3d 1350, 1355 (11th Cir. 2011) (citation omitted). It is the claimant's burden to show "that: (1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the defendants' conduct; and (3) a favorable judgment is likely to redress the injury." Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1285 (11th Cir. 2010) (citation omitted).

---

[3] Although the complaint does not allege the monetary amount of the certificates, Plaintiff concedes that Defendant granted him "a 'Receiver Certificate' in the amount of $412,500, the remaining benefits owed to [Plaintiff]" (Dkt. 16 at 4 n.5).

Emphasizing that the Benefits Claim was satisfied with receiver's certificates, Defendant submits that Plaintiff lacks standing because he has not suffered an injury to his interests under the Plan. However, the complaint clearly alleges that by satisfying the Benefits Claim with receiver's certificates, Defendant subordinated Plaintiff's rights under the Plan (Dkt. 1 ¶ 31). This is a sufficient injury for purposes of Article III standing.

Defendant further contends that any injury cannot be redressed because Plaintiff's rights under the Plan are constrained by FIRREA. However, FIRREA provides for judicial review where, among other things, the FDIC repudiates a contract or disallows a claim. See § 1821(d)(6), (e)(3). The complaint alleges that Defendant both repudiated the Plan and denied the Policy Claim. Furthermore, to the extent Plaintiff seeks relief for the subordination of the Benefits Claim, that injury could potentially be redressed. See Landwehr v. F.D.I.C., 734 F. Supp. 2d 161, 165-67 (D.D.C. 2010). Therefore, Plaintiff's claims should not be dismissed for lack of standing.

## II. Subject Matter Jurisdiction

Under FIRREA, "no court may take any action ... to restrain or affect the exercise of powers or functions of the [FDIC] as receiver." § 1821(j). "This provision has been interpreted broadly to bar judicial intervention whenever the FDIC is acting in its capacity as a receiver or conservator, even if it violates its own procedures or behaves unlawfully in doing so." Bank of Am. Nat'l Ass'n v. Colonial Bank, 604 F.3d 1239, 1243 (11th Cir. 2010) (citations omitted). Simply put, the court lacks jurisdiction to restrain or affect the FDIC's exercise of a receivership power or function. Id.

The complaint requests various forms of relief, including the resumption of cash payments under the Plan; payment of past-due benefits, plus interest; specific performance under the Plan; preliminary and permanent injunctive relief; restitution; disgorgement of profits; reimbursement of

the Plan; placement of the Policy in a constructive trust; and an opportunity to purchase the Policy. Plaintiff maintains that this court has jurisdiction to award such relief despite § 1821(j) because Defendant was not exercising a receivership power or function when it repudiated the Benefits Claim, subordinated that claim, and disallowed the Policy Claim.

    a.    **Repudiation of the Benefits Claim**

As receiver, the FDIC is authorized to determine claims in accordance with FIRREA. § 1821(d)(3)(A). Upon taking control of an insolvent institution, the FDIC must publish notice inviting creditors to present their claims within at least ninety days, and mail a similar notice to creditors shown on the institution's books. § 1821(d)(3)(B)-(C). Within 180 days of a claim's filing, the FDIC must allow or disallow the claim and notify the claimant accordingly. § 1821(d)(5)(A)(i).

The FDIC is also authorized to disaffirm or repudiate any contract which the institution entered into before insolvency upon determining, in its discretion, that: (1) performance would be burdensome; and (2) disaffirmance or repudiation would promote the orderly administration of the institution's affairs. § 1821(e)(1). Claims for repudiation damages may be brought against the FDIC, but relief is generally limited to actual direct compensatory damages as of the date of insolvency. § 1821(e)(3); see Howell v. F.D.I.C., 986 F.2d 569, 571 (1st Cir. 1993).

Plaintiff alleges that Defendant repudiated the Plan in August 2009 when it ceased benefit payments (Dkt. 1 ¶ 34). Relying on Modzelewski v. Resolution Trust Corp., 14 F.3d 1374 (9th Cir. 1994), Plaintiff submits that Defendant lacked authority to do so because the claim was vested. In Modzelewski, the court recognized that "deferred compensation agreements are benefits of employment - not all that different from salaries and other fringe benefits. As such, they are subject to termination when the [FDIC] takes over, except to the extent the right to receive them has become

vested." Id. at 1377; see 12 C.F.R. § 563.39(4)-(5) (exempting vested rights from requirement that obligations under employment contracts terminate when a savings association enters default).

Plaintiff's reliance on Modzelewski is misplaced because his bare allegation that Defendant repudiated the Plan in August 2009 when it ceased benefit payments is a legal conclusion wholly inconsistent with his factual allegation that Defendant allowed the Benefits Claim and satisfied it with receiver's certificates. Moreover, the conclusion is at odds with FIRREA's provisions governing repudiation. The FDIC is clearly permitted to cease satisfying contractual obligations without repudiation while it obtains notice of outstanding claims and determines whether to allow or disallow those claims. That Defendant did so here is confirmed by Plaintiff's allegations that Defendant took control of Colonial in August 2009, that Plaintiff filed claims in November 2009, and that Defendant determined those claims on or around April 2010.

The allegation that Defendant repudiated the Plan or terminated Plaintiff's deferred compensation benefits by satisfying the Benefits Claim with receiver's certificates is also an unsupported legal conclusion. The FDIC may pay allowed claims in such manner and amounts authorized by FIRREA. § 1821(d)(10)(A). That the FDIC may do so with receiver's certificates instead of cash is beyond cavil. Battista v. F.D.I.C., 195 F.3d 1113, 1116 (9th Cir. 1999) (citation omitted). To require cash payments would subvert FIRREA's comprehensive scheme, including provisions limiting unsecured general creditors to recovering no more than a pro rata share of an institution's liquidated assets. Id. (citation omitted). An unsecured creditor should not be permitted to "jump the line" by demanding payment in cash. Id. (citation and internal quotation marks omitted).

Because the allegations that Defendant repudiated the Plan or terminated Plaintiff's deferred

6

compensation benefits are legal conclusions unsupported by well-pleaded facts, they are insufficient.[4] See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). The remaining allegations confirm that Defendant clearly exercised its receivership powers, without repudiating the Plan, when it ceased making cash payments pending its determination of the Benefits Claim and ultimately satisfied that claim with receiver's certificates. To the extent Plaintiff seeks relief that would restrain Defendant's power to identify and determine claims before paying them and to satisfy allowed claims with receiver's certificates, this court lacks jurisdiction to grant that request.

### b. Subordination of the Benefits Claim

Plaintiff alleges that Defendant improperly subordinated the Benefits Claim by satisfying it with receiver's certificates because the claim was vested and therefore superior to unsecured creditors' claims. Given that the Benefits Claim is not secured,[5] the complaint implies that

---

[4] Plaintiff asserts that § 1821(j) does not apply to claims to recover vested ERISA benefits. Although the Eleventh Circuit has not squarely addressed the issue, the Third Circuit had held that § 1821(j) controls to the extent of such conflict. See Rosa v. Resolution Trust Corp., 938 F.2d 383, 397 (3d Cir. 1991); accord In re Landmark Land Co. of Carolina, No. 96-1404, 1997 WL 159479, at *4 (4th Cir. 1997) (per curiam) (unpublished table decision). Plaintiff submits that Rosa is inapposite because the court did not address the FDIC's right to terminate vested employee benefits. But, Rosa is not distinguishable on this basis as the allegations that Defendant rejected the Plan and terminated Plaintiff's deferred compensation benefits are insufficient.

[5] Plaintiff does not allege that the Benefits Claim is secured. The Plan's plain terms confirm that it is not:

> The Employee, or any other person who may have or claim any interest in [the Plan] or any right to any payment, benefit or compensation payable hereunder, shall rely solely upon the unsecured promise of the Bank as set forth herein for the payment of any such benefit or compensation, and nothing herein contained shall be construed to give or vest in the Employee or any other person now or at any time in the future, any right, title, interest or claim in or to any asset, fund, reserve, account or property of any kin[d] whatever owned by the Bank or in which it may have any right title of interest now or at any time in the future.

Plaintiff's rights are superior to those of an unsecured creditor but distinct from those of a secured creditor.

FIRREA prioritizes claims based on whether they are secured or fall within specific enumerated classes of unsecured claims; it does not provide any other classifications. See § 1821(d)(11)(A). A court may not require Defendant to classify the Benefits Claim in a manner inconsistent with FIRREA. Liberally construed, however, the complaint could be interpreted to allege that Defendant improperly classified Plaintiff's unsecured claim.

The FDIC must satisfy unsecured claims in the following order of priority: the receiver's administrative expenses; the institution's deposit liabilities; the institution's general or senior liabilities; any obligation subordinated to depositors or general creditors; and any obligation to shareholders or members arising as a result of such status. § 1821(d)(11). The Regulations governing FIRREA clarify that deposit liabilities are given the same priority as "claims which have accrued and become unconditionally fixed on or before the date of default, whether liquidated or unliquidated." 12 C.F.R. § 360.3(a)(6). Claims that do not satisfy this standard are assigned a lower priority. Id. § 360.3(a)(7).

Insofar as Plaintiff alleges that the Benefits Claim had accrued and become unconditionally fixed at the time of insolvency, it had priority over claims that had not. The complaint, however, does not allege the priority assigned to the certificates; rather, it alleges that the Benefits Claim was assigned the same priority as that of an unsecured creditor. Given that the Benefits Claim is not

---

(Dkt. 1 Ex. 2 § 7.1) (emphasis added).

secured, Defendant properly exercised its receivership duties in deeming that claim unsecured.[6] Pursuant to § 1821(j), this court lacks jurisdiction to review that decision.

### c. Denial of the Policy Claim

Plaintiff also alleges that Defendant wrongfully denied the Policy Claim (Dkt. 1 ¶ 35).

The FDIC may disallow any creditor's claim that is not proved to the FDIC's satisfaction. § 1821(d)(5)(D)(i). Within sixty days of receiving notice of the disallowance of a claim, a creditor may file suit on the claim. § 1821(d)(6)(A)(ii). However, no court may review the FDIC's disallowance of a claim. § 1821(d)(5)(E). Rather, judicial review is by a *de novo* determination of the claim. Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1003 (4th Cir. 1994).

Once the Policy Claim was disallowed through the administrative process, Plaintiff had a right to de novo judicial review under § 1821(d)(6)(A)(ii). See Colonial Bank, 604 F.3d at 1244. The complaint, however, does not invoke this provision or assert that Plaintiff seeks a de novo determination of the Policy Claim. Rather, Plaintiff characterizes the disallowance as wrongful, incorrect, arbitrary, and capricious, and requests various forms of injunctive or equitable relief, including an order directing Defendant to sell the Policy to Plaintiff.

This court is barred from granting such relief. Defendant's exercise of a receivership power or function would be restricted or affected if this court granted injunctive relief or required specific performance, regardless of whether Defendant breached the Plan. See RPM Invs., Inc. v. Resolution Trust Corp., 75 F.3d 618, 621 (11th Cir. 1996) (per curiam). Plaintiff's request for a constructive trust similarly implicates § 1821(j). See Hanson v. F.D.I.C., 113 F.3d 866, 871 (8th Cir. 1997);

---

[6] Consequently, the court need not resolve whether § 1821(j) bars it from ordering Defendant to re-classify Plaintiff's unsecured claim.

Bender v. CenTrust Mortg. Corp., 833 F. Supp. 1525, 1539 (S.D. Fla. 1992). Even assuming arguendo that the court found the Policy Claim should be allowed after de novo review, it would be for Defendant to determine how to satisfy that claim, whether by selling the Policy to Plaintiff, issuing Plaintiff receiver's certificates, or by other means. Pursuant to § 1821(j), this court lacks jurisdiction to grant Plaintiff the requested relief.

### Conclusion

Although Plaintiff has satisfied his burden of establishing Article III standing to bring his claims, based on the allegations in the complaint, § 1821(j) of FIRREA bars this court from granting Plaintiff the requested relief. Therefore, his claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)  Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction (Dkt. 10) be **GRANTED**.


**Date: May 20, 2011**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge